UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MELINDA GODBEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-045-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | **MEMORANDUM OPINION** |
| Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Melinda Godbey filed this action against Defendant Andrew M. Saul, Commissioner of Social Security, challenging his denial of her application for Social Security benefits. The parties have filed cross-motions for summary judgment. [Record Nos. 14, 16] Godbey contends that the Administrative Law Judge ("ALJ") assigned to her case erroneously concluded that she did not meet two of the listed impairments contained in 20 C.F.R. part 404, Subpart P, Appendix 1 for adult mental disorders. [Record No. 14-1] More specifically, she argues that the ALJ improperly "discredit[ed] the Plaintiff regarding the severity of her impairments" and his determination was not supported by substantial evidence. [*Id.*] However, following a full review of the record, the Court concludes that the Commissioner's decision is supported by substantial evidence. Therefore, his Commissioner's motion for summary judgment will be granted and the relief sought by the plaintiff will be denied.

## I.     PROCEDURAL HISTORY

Godbey filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act ("the Act")

- 1 -

on May 15, 2017.  [*See* Transcript, hereafter "Tr.", 223-229; 230-236.]  She alleged a disability onset date of January 1, 2016, based on claims of degenerative disk disease, post-traumatic stress disorder ("PTSD"), diabetes, depression, anxiety, and knee and stomach problems.  [*Id.*; Tr. at 254]  Her application was denied, initially and upon reconsideration.  [Tr. 80, 91, 110-111, 123-124]  At Godbey's request, an administrative hearing was held before ALJ Robert B. Bowling on August 7, 2019.  [Tr. 163-164, 187]  ALJ Bowling issued an unfavorable decision on August 20, 2019, and the Appeals Council denied review on December 10, 2019.  [Tr. 1; 12-35]  Thus, Godbey has exhausted her administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    STATEMENT OF FACTS

Godbey was 48 years old on the alleged onset date and 51 years old on the date of her hearing before ALJ Bowling. [1]  [Tr. 26]  She has a high school education and past relevant work as an emergency medical technician ("EMT"), a security guard, and a deputy jailer.  [Tr. 40, 253, 255]  Godbey alleges that her conditions worsened to the point that she could no longer work beginning on January 1, 2016.[2]  [Tr. 255]  Godbey reported no earnings after 2012.  [Tr. 18, 237]

---

[1]    As the ALJ noted, Gobey's age category changed between the initial denial and the administrative hearing.  *See* 20 C.F.R. §§ 404.1563, 416.963.  An age category is one of the relevant considerations at the fourth step of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520(f), 416.920(f).  Godbey challenges ALJ Bowling's findings at step three. Nevertheless, the ALJ properly weighed Godbey's age category in the disability determination, as explained more fully below.

[2]    The record contains numerous references to work performed by Godbey well after the alleged onset date.  For example, Jo Noel, her psychiatric nurse practitioner, reported in June 2016 that Godbey had returned to work as an EMT following a knee surgery.  [Tr. 988, 992] And as late as October 2016, Noel reported that Godbey was actively working as a first

Godbey's benefits application was supported by the third party function report of her mother, which stated that Godbey "stays depressed" and does not have the personality she once had due to mental impairments.  [Tr. 278]  Godbey began mental health treatment in June 2015.  [Tr. 577-79]  Her reported symptoms included flashbacks, suicidal ideation, and excessive worry, leading Noel to diagnose her with major depressive disorder and post-traumatic stress disorder.  [Tr. 1020-22]  Over the course of treatment, Godbey's condition periodically improved and digressed.  At times, Godbey reported that she was "doing pretty well managing [her] anxiety," while other days she was "not too good."  [Tr. at 978, 984, 1000, 1005]  Frequently, Godbey attributed her anxiety and depression to disputes with her roommate and her roommate's live-in grandchildren.  [*See* Tr. 920, 923, 926, 934, 938, 948, 954, 958, 964, 968, 1531.]  Godbey also noted that certain locations, events, or things she watched on television would trigger anxiety.  [Tr. 963, 984, 988, 992, 1012]  She frequently complained of her inability to sleep due to nightmares, allegedly triggered by PTSD.  [Tr. 942, 968, 974, 978, 983, 984, 988, 1875]

Dr. Jennifer Fishkoff provided a consultative psychiatric examination on June 28, 2017.  Dr. Fishkoff concluded that Godbey's concentration and memory were below average.  [Tr. 686]  She also diagnosed Godbey with major depressive disorder, in partial remission, PTSD, and a panic disorder.  [*Id.*]  Fishkoff further concluded that Godbey was severely impaired regarding her ability to multi-task, follow multi-step instructions, and sustain attention to perform simple and repetitive tasks over an eight-hour workday.  [Tr. 687]

---

responder.  [Tr. 984]  Noel note in February 2017 that Godbey had "decided to leave EMT work."  [Tr. 963]

Godbey attempted suicide on April 11, 2019, and was hospitalized for ten days.  [Tr. 1701, 1707, 1725, 1733, 1852-55, 1875]  In the months leading up to the attempt, Godbey reported high anxiety and depression levels, as well as escalating back pain.  [Tr. 1507, 1531, 1535, 1543]  Godbey did not recall why she attempted suicide, but reported that she wished her attempt had been successful.  [Tr. 1917]  During the administrative hearing, held nearly four months after the hospitalization, Godbey testified that she still has "ups and downs" and that her mental health issues had not resolved.  [Tr. 46]  On a down day, Godbey stated that she "do[es] good to get out of bed."  [*Id.*]  And on a "rare" good day, Godbey is able to get out of bed.  [*Id.*]

As noted, Godbey applied for benefits based on a number of alleged physical and mental ailments.  [Tr. 254, 353]  ALJ Bowling determined that Godbey had the following severe impairments that significantly limited her ability to perform basic work activities: degenerative disk disease of the lumbar spine; diabetic mellitus; dysfunction of the left knee and right ankle; obesity; peripheral neuropathy/carpal tunnel syndrome; depressive disorder; anxiety; and PTSD. [3]  [Tr. 18]  However, the ALJ determined that Godbey's impairments, individually or combined, did not meet or medically equal the severity of the listed impairments ("Listings") in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Tr. 20-21; *see also* 20 C.F.R. §§ 404.1520(d), 416.920(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").]

---

[3]    ALJ Bowling also found that Godbey suffered from the following non-severe impairments: essential hypertension; hyperlipidemia; and cirrhosis of the liver with gatroparesis.  [Tr. 18]

ALJ Bowling first considered whether Godbey's physical impairments met a Listing. He considered Listing 1.03, which deems an applicant disabled due to "[r]econstructive surgery . . . of a major weight-bearing joint, with inability to ambulate effectively, . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  Godbey's left knee and right ankle had been surgically repaired to increase stability.  [*See* Tr. at 438, 707, 930]  Howevre, the ALJ found "no evidence that the claimant was unable to ambulate effectively as required by [Listing 1.03]."  [Tr. 20]

Next, the ALJ turned to Listing to 1.04, which covers "[d]isorders of the spine (e.g., . . . degenerative disc disease, . . . ), resulting in compromise of a nerve root . . . or the spinal cord." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  To be included within the Listing, the disorder must be accompanied by either: "(a) nerve root compression; (b) spinal arachnoiditis; or (c) lumbar spinal stenosis." [Tr. 20]  Godbey had suffered from progressive back pain for about ten years, in part due to degenerative disc disease.  [Tr. 295, 483, 488, 656, 882, 1041]  The pain reportedly radiated down her right leg and caused weakness.  [Tr. 478]  ALJ Bowling concluded that Godbey did not meet this Listing because her degenerative disc disease was not accompanied by any of the identified conditions.  [Tr. 20]

The final physical Listing considered by the ALJ was 11.14, which covers

Peripheral neuropathy, characterized by A or B:
A.      Disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or
B.      Marked limitation in physical functioning, and in one of the following:
　　1. Understanding, remembering, or applying information; or
　　2. Interacting with others; or
　　3. Concentrating, persisting, or maintaining pace; or
　　4. Adapting or managing oneself.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (internal references omitted).  ALJ Bowling found "no evidence of either the disorganization of motor function or marked limitations required in order to meet or equal [Listing 1.14]."  [Tr. 20]  Nor did he find that any of Godbey's other physical impairments, when considered in combination with one another, met or equaled any of the Listings.  [*Id.*]

ALJ Bowling also determined that Godbey's mental impairments did not meet either Listing 12.04 or 12.15.  [*Id.*]  Listing 12.04 requires that an applicant suffer from a depressive disorder and "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: [u]nderstand, remember, or apply information; [i]nteract with others; [c]oncentrate, persist, or maintain pace; [and] [a]dapt or manage oneself."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B), hereafter "Paragraph B criteria."  Listing 12.15 concerns applicants suffering from "[t]rauma- and stressor-related disorders," and it includes the same Paragraph B criteria as Listing 12.04.  *Id.*  The ALJ concluded that Godbey suffered only "moderate limitation[s]" in each of the relevant areas and, therefore, her mental impairments did not meet the requirements of either Listing.  [Tr. 21]

Relying on the disability determination explanations of State Agency reviewing physicians Gary Parry and Angela Register, ALJ Bowling concluded that Godbey's ability to understand, remember, or apply information was only moderately limited.  [Tr. 21]  He acknowledged that the consultative examiner, Dr. Fishkoff, found that Godbey's cognitive deficits were more severe, but found her opinion unpersuasive.  [*Id.*]

Further, the ALJ found that Godbey's ability to interact with others was only moderately limited by her mental disorder.  [Tr. 21]  Acknowledging that she "does not do

anything social," "hates being in a crowd," and "gets irritable when she does not feel well," ALJ Bowling found that Godbey "admit[ted] to talking to friends." [*Id.*]  Next, Godbey's ability to concentrate, persist, or maintain pace was also determined to be only moderately impaired.  Specifically, the ALJ concluded that Godbey's hobbies include "reading and watching television," which undercut her claim that she struggled with concentration.  [*Id.*] Finally, the ALJ found only a moderate limitation regarding Godbey's ability to adapt or manage herself.  Godbey's reliance on others for transportation and personal shopping was outweighed by the fact that she prepared her own food, groomed herself, and cared for a dog. [*Id.*]  As such, ALJ Bowling did not find the two marked limitations or one extreme limitation required by Paragraph B of Listings 12.04 and 12.15.[4]  [*Id.*]

Having concluded that Godbey did not meet a Listing, ALJ Bowling reasoned that she had the residual functional capacity ("RFC") to perform a limited range of light work as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b).  [Tr. 21-22]  Based on her specific restrictions, the ALJ determined that Godbey "is limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements and involving only simple work-related decisions with few, if any, workplace changes.  She should have only occasional interaction with the general public and coworkers, and only occasional supervision."  [Tr. 22]

---

[4]     Both Listing 12.04 and 12.15 may be met if a claimant satisfies the criteria of Paragraph C, which concerns "serious and persistent" mental disorders that result in "minimal capacity to adapt to changes . . . or demands that are not already part of [a claimant's] daily life." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).  ALJ Bowling considered these criteria and found "no medical evidence in the record" that would meet them.  [Tr. 21]  Godbey does not challenge this determination, but the Court nevertheless finds this determination to be substantially justified by the record, as explained below.

The ALJ also concluded that Godbey's mental impairments would not prevent her from engaging in the work activities under these restrictions. [Tr. 26] He reiterated that the medical evidence did not "support marked or extreme findings on an ongoing basis." [Tr. 25] Bowling noted that her condition was frequently reported as blunted, constricted, anxious, or depressed, [Tr. 921, 924, 932, 936, 944, 966, 990, 1001, 1014], but also found that her mentation, attention, and concentration were often described as normal, and her memory was found to be intact. [Tr. 922, 936, 944, 956, 994, 1038, 1044, 1094] Further, he "did not find Dr. Fishkoff's opinion to be persuasive inasmuch as it [wa]s premised on subjective reports of symptoms and [wa]s inconsistent with the more typical objective medical findings" in the record. [Tr. 26] Thus, the ALJ found that Godbey's mental impairments did not prevent her from performing the work assigned by her RFC. [*Id.*]

Although Godbey is unable to perform any of her past relevant work, the ALJ found that jobs exist in significant numbers in the national economy that she can perform. [Tr. 26-28] As such, ALJ Bowling concluded that she is not disabled under the Act. [Tr. 28]

### III.   STANDARD OF REVIEW

The Act defines a "disability" as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). To determine whether a claimant is disabled under the Act, the ALJ follows "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of satisfying the first four steps of the process, and the burden shifts to the

Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, the claimant must show that she suffers from a severe impairment or a combination of impairments that limits her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  At step three, if the claimant can demonstrate that she has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  But if the claimant does not meet a Listing, the ALJ will assess and make a finding about a claimant's RFC before moving to step four.  20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can perform her past work, she is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work.  If she cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. §§ 404.1520(g), 404.1520(g).  "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'"

*White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must examine the entire record, but it may not review the record *de novo*, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. 42 U.S.C. § 405(g); *Bass*, 499 F.3d at 509.

## IV.   ANALYSIS

Godbey argues that ALJ Bowling erred at step three of the sequential analysis. She makes three arguments[5] in support of her motion, two of which are really the same. She argues that the ALJ "failed to appropriately weigh and consider" her testimony when assigning an RFC; and, as such, the RFC is "directly contradicted by the evidence." [Record No. 14-1, p. 6] Both arguments turn on whether the ALJ's decision to discredit her testimony was proper.

---

[5]   Godbey also states that the ALJ "failed at [s]tep [t]wo of the sequential evaluation to consider Godbey's severe mental health impairments." [Record No. 14-1] Howevr, she provides no support for this conclusory allegation. The ALJ expressly found that depressive disorder, anxiety, and PTSD were among her severe impairments. [Tr. 18] Becuase there is no evidence in the record of any other severe mental health impairments, ALJ Bowling's decision at step two was substantially supported by the evidence.

Third, she argues that the ALJ's determination that she did not meet a Listing was generally not supported by substantial evidence.  [*Id.*]  The Court will consider each argument in turn.

>    A.    **The ALJ properly considered Godbey's subjective testimony and gave adequate reasons for assigning little weight to Dr. Fishkoff's opinion.**

Godbey argues that the ALJ erred by failing to accept her subjective complaints regarding the severity of her mental health impairments.  [Record No. 14-1, pp. 8-9]  Godbey also asserts that he gave insufficient reasons for discounting Dr. Fishkoff's opinion regarding the severity of her impairments.  [*Id.* at p. 8]  Although Godbey makes these arguments together, the standards an ALJ must apply when considering opinion evidence and a claimants' subjective complaints are different.

As noted, Dr. Fishkoff provided a consultative psychiatric examination of Godbey. [*See* Tr. 679-687.]  Unlike the opinions of treating physicians, the opinions of one-time examining sources are not entitled to any special degree of deference.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Instead, they should be weighed considering the factors laid out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  Here, the ALJ engaged in a proper analysis of Dr. Fishkoff's opinion.  He noted that she examined Godbey one time, and found that her opinion was contradicted by the more common objective medical findings in the record.  [Tr. 26]  Importantly, the ALJ cited the observations of other examiners and treating physicians, who frequently described Godbey's condition differently.  [Tr. 25]  As such, ALJ Bowling concluded that Fishkoff's opinion was unpersuasive because it was largely inconsistent with the record.  [Tr. 26]; 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Godbey also suggests that Fishkoff's opinion should have been accepted because it aligns with her own subjective complaints. However, the ALJ is not required to accept an opinion that is premised solely on the claimant's subjective complaints. *See Webb v. Astrue*, No. 08-181, 2009 WL 961851, at *6 (E.D. Ky. Apr. 8, 2009). Here, other examining physicians faulted Fishkoff's opinion because it was too reliant on Godbey's subjective complaints. [*See* Tr. 72, 109.] Instead, the regulations provide a two-step process for evaluating claimants' subjective complaints of symptoms, and ALJ Bowling performed that analysis. *See* 20 C.F.R. § 404.1529, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

The ALJ first determined that Godbey had medically determinable impairments that could reasonably be expected to cause the symptoms alleged. [Tr. 22-23]; *see* 20 C.F.R. §§ 404.1529(b), 416.929(b). Along with her physical impairments, Bowling noted that she was impaired by panic attacks and depression. [Tr. 22] He concluded, however, that Godbey's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Tr. 23]; *see* 20 C.F.R. §§ 404.1529(c), 416.929(c). For example, despite Godbey's insistence that she was unable the interact with others, she admitted to interacting with friends. [Tr. 21, 72] The ALJ also noted her subjective complaints of persistent symptoms were contradicted by the objective evidence of record, which showed that her conditions fluctuated. [Tr. 25]

Further, ALJ Bowling's credibility determinations are given "great weight, particularly since the ALJ is tasked with observing the claimant's demeanor and credibility." *Cruse*, 502 F.3d at 542. Because Godbey has not identified any error in the ALJ's consideration of her subjective complaints of symptoms, there is no basis to disturb his ruling on this ground.

**B.     The ALJ's decision is supported by substantial evidence.**

Godbey contends that ALJ Bowling erred in concluding that her mental impairments were not severe or extreme enough to meet the Paragraph B criteria of Listings 12.04 and 12.15. [Record No. 14-1, p. 5] As noted, an ALJ must determine at step three whether a claimant's impairments or combination of impairments meet or medically equal a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d). To satisfy either Listing 12.04 and 12.15, a claimant must demonstrate that she meets the requirements of both paragraphs A and B, or the requirements of both paragraphs A and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Listings 12.04 and 12.15 share identical Paragraph B criteria, and a claimant must show that their impairments result in extreme limitation of one, or marked limitation of two, of the four criteria. *Id.*

In concluding that Godbey demonstrated only moderate limitations of the four areas of mental functioning, the ALJ relied on substantial evidence. [Tr. 21] For example, concerning her ability to understand, remember, or apply information, ALJ Bowling noted that Godbey testified that she did not require reminders to take her medication, and that Drs. Fishkoff, Parry, and Register agreed that her cognitive defects were mild. [*Id.*] Godbey primarily objects to the ALJ's conclusions regarding the second and third Paragraph B criteria: interacting with others and concentrating, persisting, or maintaining pace. [Record No. 14-1, pp. 7-9]

She argues that the ALJ placed controlling weight on the fact that she "admit[ted] to talking to friends," and that this fact alone "does not negate the facts that show she has at least a marked limitation interacting with other people, including her family and friends." [*Id.* at p. 8] But the ALJ acknowledged that Godbey "does not do anything social," "hates being in a crowd," and "gets irritable when she does not feel well." [Tr. 21] Only after considering these facts did Bowling note that Godbey admitted to talking to friends, as well as the opinions of

reviewing physicians Parry and Register.  [*Id.*]  Dr. Register's review states that Godbey "[i]nteracts with friends in person, by phone, or by internet," and that her "social interacting [wa]s not reported as limited by panic attacks."  [Tr. 72]  Also, the record contains other references to Godbey's ability to interact with others.  For example, her relevant work as an EMT required her to interact with a team of first responders.  [*Id.*]  And Noel's progress notes indicate that at some point during the relevant period Godbey's roommate was "jealous that she ha[d] made new friends and [wa]s not home as much."  [Tr. 963]  Thus, substantial evidence supported the ALJ's conclusion that any limitation on Godbey's ability to interact with others as a result of her mental impairment was not marked or extreme.

Godbey makes a similar objection to the finding regarding her ability to concentrate. She argues that the ALJ improperly relied on the fact that her hobbies include reading and watching television. [Record No. 14-1, p. 8]  But again, ALJ Bowling relied on both Godbey's claims about her hobbies and the opinions of Drs. Parry and Register.  [Tr. 21]  Dr. Register's review found that Godbey typically "follows instructions and finishes what she starts," such as completing daily chores, cooking, and taking care of her dog.  [Tr. 72]  She concluded that Godbey may have difficulty with detailed tasks, but she is "capable of understanding, remembering, and sustaining concentration and adapting to carrying out simple, routine tasks." [*Id.*]  And the ALJ noted that this conclusion was supported by other instances where Godbey's attention and concentration were described as normal.  [Tr. 25]

Godbey essentially asks the Court to reweigh the evidence of record and find that her position is better supported.  But that is beyond the scope of review of the undersigned.  The ALJ properly reviewed the record and assigned weight to the evidence to reach his conclusion.

As such, there is no error upon which reversal could be based. *See Reams v. Saul*, No. 6:18-CV-00270-GFVT, 2019 WL 7038260, at \*4 (E.D. Ky. Dec. 20, 2019).

Godbey's challenges aside, the ALJ's disability determination was supported by substantial evidence. He based his conclusion on the evidence in the record and explained why certain evidence was more or less persuasive. Notably, ALJ Bowling assigned great weight to the opinions of reviewing physicians Register and Parry. [Tr. 21, 25] He noted that these opinions were supported by detailed explanations, rationales, and analyses of the available medical evidence of record. [Tr. 25] Additionally, the ALJ found these assessments to be consistent with medical observations throughout the relevant period. State agency consultative opinions may constitute substantial evidence supporting an ALJ's opinion. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009); *Conway v. Berryhill*, No, 1: 18-cv-218, 2018 WL 7079488, at \*8 (N.D. Ohio Dec. 17, 2018) (collecting cases).

Further, the ALJ considered the combined effects of Godbey's severe and non-severe impairments to make his disability determination and develop her RFC. [Tr. 26] He relied on the testimony of a vocational expert to determine that significant jobs exist in the national economy that Godbey may perform based on her age, education, work experience, and RFC. [Tr. 27] Accordingly, ALJ Bowling's decision is supported by substantial evidence.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     Plaintiff Melinda Godbey's motion for summary judgment [Record No. 14] is **DENIED**.

- 16 -

2.      Defendant Commissioner Andrew Saul's motion for summary judgment [Record No. 16] is **GRANTED**.

Dated:  October 13, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky